UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DEONDREA LEE NEWSOME,<br><br>Defendant. | No. 1:13-cr-00187-DAD-SKO-1<br><br>ORDER DENYING DEFENDANT'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 66) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought by defendant Deondrea Lee Newsome. (Doc. No. 66.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On May 2, 2013, an indictment was returned charging defendant Newsome with one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1). (Doc. No. 1.) On September 13, 2013, defendant entered a plea of guilty to a superseding information charging him with kidnapping in violation of 18 U.S.C. § 1201(a)(1) pursuant to a written plea agreement. (Doc. Nos. 22, 23.) On November 18, 2013, the court sentenced defendant Newsome to 60 months

1

imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 60-month term of supervised release. (Doc. Nos. 34, 35.) The court also imposed the mandatory $100 special assessment. (*Id.*) Defendant was released from custody following service of his custodial sentence and began his term of supervised release on August 24, 2017. (Doc. No. 53 at 1.)

On January 22, 2018, the U.S. Probation Office filed a petition for warrant or summons alleging that defendant had violated conditions of his supervision. Specifically, the violation petition alleged the following three charges: (1) unlawful use of a controlled substance on or around November 2017; (2) a new law violation for alleged possession and access to ammunition; and (3) association with persons engaged in criminal activity. (Doc. No. 39.) On March 5, 2018, defendant's supervised released was revoked and he was sentenced on the first charge to six months in the custody of the BOP to be followed by fifty-four months of supervised release. (Doc. Nos. 51, 52.) Defendant was released from BOP custody on July 23, 2018. (Doc. No. 72 at 3.)

On July 9, 2019, the Probation Office filed a second supervised release violation petition against defendant, alleging therein that he had violated conditions of his supervised release as specified in the following three charges: (1) a new law violation for alleged possession of a firearm; (2) a new law violation for alleged possession and access to ammunition; and (3) unauthorized contact with minors that were not defendant's biological children. (Doc. No. 53.) On September 14, 2020, defendant Newsome was sentenced on violation charges 1 and 3 to eighteen months in the custody of the BOP, with no term of supervised release to follow. (Doc. Nos. 63, 64.)

Defendant Newsome is currently serving his sentence at Federal Correctional Institution, Mendota ("FCI Mendota"). (Doc. Nos. 66 at 2–3; 72 at 4.) As of the date of this order, defendant has served approximately 12 months, or 67% of the full 18-month custodial sentence imposed for his latest violations of supervised release. (Doc. No. 72 at 4.) Accounting for good time credit, his projected release date is October 17, 2021. (*Id.*)

/////

On January 21, 2021, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 66.) The court referred defendant's motion to the Federal Defender's Office. (Doc. No. 67.) After an extension of time was requested and granted, on May 6, 2021, appointed counsel filed a notice of non-supplementation and a request for leave to withdraw as counsel on behalf of petitioner. (Doc. Nos. 68, 69, 70.) The government filed its opposition to the pending motion on June 4, 2021. (Doc. Nos. 72, 73, 74, 75, 76.) Defendant did not file a reply.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable,

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

```
                if it finds that –

         (i)    extraordinary and compelling reasons warrant such a
                reduction; or

         (ii)   the defendant is at least 70 years of age, has served at least
                30 years in prison, pursuant to a sentence imposed under
                section 3559(c), for the offense or offenses for which the
                defendant is currently imprisoned, and a determination has
                been made by the Director of the Bureau of Prisons that the
                defendant is not a danger to the safety of any other person or
                the community, as provided under section 3142(g);

         and that such a reduction is consistent with applicable policy
         statements issued by the Sentencing Commission[.]
```

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

/////

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

Comm'n 2018)³; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must

---

³ According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

### A.     Administrative Exhaustion

In this case, the parties agree that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 66 at 3–4; 72 at 4–5.) Specifically, defendant Newsome submitted a written request for compassionate release to the warden of FCI Mendota on December 4, 2020, and the warden denied that request on December 10, 2020. (*Id.*)[4] Accordingly, the court will turn to the merits of defendant's motion.

### B.     Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

/////

---

[4] *But see* footnote 1, above.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at

least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In his pending motion, defendant Newsome makes three arguments he asserts qualify him for compassionate release at this time. (Doc. No. 66.) First, he argues that the "circumstances within a prison environment" put him at additional risk because COVID-19 is spreading more quickly through the prison system. (*Id.* at 1, 9.) Defendant also states his "underlying health conditions"[6] and the residual effects from previously contracting COVID-19 he is experiencing are extraordinary and compelling reasons, which the court should rely upon to reduce his sentence to time served. (*Id.* at 5–6.) Finally, defendant asserts that his mother has been diagnosed with ovarian cancer, and she is presently very sick and is receiving chemotherapy. (*Id.* at 10.) Defendant's mother cares for defendant's children, and he also requests release so that he may assist his mother in caring for his children. (*Id.*)

In its opposition to the pending motion, the government argues that the mere existence of COVID-19 in society or in the correctional institution where defendant Newsome is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (Doc. No. 72 at 7.) The government emphasizes that defendant has failed to show the existence of extraordinary and compelling reasons calling for his release because even though defendant argues he should be released due to the lingering effects from contracting COVID, his medical records do not indicate he suffers from any health conditions identified by the U.S. Centers for Disease Control and Prevention ("CDC") that may cause severe illness from COVID-19, and because he has now been fully vaccinated. (*Id.* at 4, 7–8.) Finally, the government contends that the need to care for one's parents is not a basis for compassionate release. (*Id.* at 9.)

/////

---

[5] Here, however, because defendant Newsome is only 38 years old (Doc. No. 72-1 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

[6] The court notes that defendant does not identify any specific underlying health conditions or provide any evidentiary support for these contentions.

The court concludes that defendant has failed to show the existence of extraordinary and compelling reasons calling for his release from confinement in light of the critical fact that he is now fully vaccinated, combined with the fact that he does not appear to suffer from any underlying conditions that may place him at a high risk of suffering severe illness were he to again contract COVID-19. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Aug. 20, 2021). Defendant has not provided any evidence in support of his contentions that he is at particular risk from COVID-19 at this time.

It is true that as of the date of this order, the BOP is now reporting that there are now 44 inmates and 0 staff members at FCI Mendota who have tested positive with active cases of COVID-19. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited September 3, 2021). The number of prisoners at that institution who have tested positive with active cases COVID-19 has increased significantly over the past week, consistent with spread of the Delta variant of the virus. Nonetheless, defendant Newsome's fully vaccinated status militates against his early release. (Doc. No. 76 at 8—SEALED.) According to the CDC, authorized vaccines in the U.S., including the Moderna vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 27, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals remain very well protected against becoming severely ill from COVID-19 even if they contract it. *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB-2, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, No. 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Or. May 27, 2021) (concluding that federal prisoners

who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, No. 08-cr-4402-DMS, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 3:16-cr-5535-BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

While defendant argues that the COVID-19 pandemic is an unprecedented event that poses a particular risk for prisoners (Doc. No. 66 at 9–10), this alone does not justify early release given the risk COVID-19 poses to all in society.  As one court has acknowledged, "the presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing may constitute an inability to provide self-care under some circumstances.  *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. April 24, 2020) (citation omitted).  However, here, defendant Newsome has not argued that he is has any unmet self-care needs.  Furthermore, he has not persuasively argued that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 or that his ability to provide self-care at FCI Mendota is currently

substantially diminished.  Rather, in his pending motion, defendant merely asserts in conclusory fashion that "defendant needs to be removed from this dangerous environment and placed in a safe location." (Doc. No. 66 at 10.)  Defendant Newsome has not made any specific allegations regarding, for instance, his lack of access to protective gear or cleaning and sanitizing supplies, or as to his lack of ability to social distance at FCI Mendota.  Again, defendant Newsome has not presented any evidence in support of his motion regarding the conditions that he is currently facing at FCI Mendota, or the ways in which those conditions render him unable to provide self-care.

Finally, while the court is sympathetic to the situation presented by defendant's mother suffering from cancer and defendant's desire to help care for her, no court in this circuit has yet recognized this reason as a basis to justify compassionate release.  Other courts considering similar arguments have determined that this ground alone does not qualify as an "extraordinary and compelling reason" justifying compassionate release.  *See, e.g.*, *United States v. Goodwin*, No. 4:18-CR-00072-DCN, 2021 WL 3751153, at *3 (D. Idaho Aug. 24, 2021) (denying compassionate release based upon the defendant's desire to care for an elderly parent); *United States v. Gaskin*, No. 2:15-cr-00352-GEKP-1, 2020 WL 7263185, at *4 (E.D. Pa. Dec. 9, 2020) (same); *United States v. Henry*, No. 1:13-cr-00091-RRM, 2020 WL 3791849, at *4 (E.D.N.Y. July 6, 2020); *United States v. Goldberg*, No. 1:12-cr-00180-BAH, 2020 WL 1853298, at *4 (D.D.C. Apr. 13, 2020) (same); *United States v. Ingram*, No. 2:14-cr-00040, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) (same).  While this court has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13" after the Ninth Circuit's decision in *Aruda*, U.S.S.G. § 1B1.13 may still inform this court's determination. *Jones*, 980 F.3d at 1111.  Here, because defendant has failed to provide any evidence of his mother's conditions or its severity or prognosis, the court need not make a determination whether this ground could ever provide the basis for the relief requested by defendant.  Instead, the court will only reject defendant's argument in this case based upon his failure to make an adequate showing.

/////

In light of all of the above, the court concludes that defendant Newsome has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582 (c)(1)(A). Therefore, his motion for compassionate release will be denied.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Newsome's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned at this time is not yet persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[7] *See Parker*, 461 F. Supp. 3d at 979.

Defendant contends that a reduction of his sentence is consistent with consideration of the § 3553 sentencing factors because he has only a short time left in his sentence and he is no longer a danger to the community. (Doc. No. 66 at 10.) He asserts in confusing fashion that "he has satisfied the need for incarceration due to his violation of his supervised release." (*Id.*) Defendant also states he has a "safe, stable, and supportive environment" to which he can return upon his release and that releasing him now is the safest outcome for him as well as the other inmates and "society as a whole." (*Id.*)

The government counters that the § 3553(a) sentencing factors do not support a shortened sentence due to the seriousness of defendant's offenses and because defendant has "made very clear his lack of respect for law." (Doc. No. 72 at 9.) The government asserts that defendant is serving his third federal prison sentence, and two of those terms of imprisonment were imposed

---

[7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

13

1   due to his violation of the terms of his supervised release. (*Id.*)

2   As noted by the government, defendant has twice violated his supervised release (Doc.
3   Nos. 52, 64) and has engaged in criminal conduct that is quite serious. The initial conduct giving
4   rise to defendant's conviction in this case, as admitted in defendant's plea agreement, involved
5   his kidnapping of a minor child who was held against her will in a motel room.[8] (Doc. No. 22
6   at 3.)

7   Defendant's most recent violation of his supervised release involved charges of unlawful
8   possession of a firearm and unauthorized contact with minors. (Doc. No. 53.) Before sentencing
9   on that latest violation, the U.S. Probation Office determined that defendant's advisory sentencing
10  guideline range on the violation called for a term of imprisonment of between twelve and
11  eighteen months. (Doc. No. 62 at 3.) After consultation with defendant's U.S. Probation Officer,
12  the government recommended a top-of-the-guidelines sentence of eighteen months imprisonment
13  on the violation. (*Id.*) Noting the severity of the new violation conduct, the serious nature of the
14  violation of the court's trust and the closeness in time of the violations of defendant's supervised
15  release, the undersigned imposed a sentence of eighteen months, to run consecutively to any state
16  prison sentence imposed. (Doc. Nos. 63, 64.)

17  Defendant Newsome has not made a persuasive showing nor advanced any meaningful
18  arguments demonstrating that his sentence should be reduced. Other than describing that he
19  would be able to return to a supportive home, defendant has not described any actions or efforts
20  he has taken to better position himself to be successful outside of confinement. Given the
21  severity of the violation conduct and defendant's repeated violations of the terms of his
22  supervision, the court is not persuaded that a reduction in defendant's sentence would be
23  consistent with the appropriate consideration of the sentencing factors set forth in §§ 3553(a) and
24  3583 at this time.

25  /////

---

[8] The government further contends that when the victim attempted to escape the motel room, she was physically assaulted by defendant, punched in the face, and choked until she lost consciousness. (Doc. No. 62 at 2.) Thereafter, defendant sex trafficked the minor child, forcing her to engage in prostitution for his financial benefit. (*Id.*)

14

**CONCLUSION**

Because defendant Newsome has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. §§ 3553(a) and 3583, his motion for compassionate release (Doc. No. 66) is denied.

IT IS SO ORDERED.

Dated:   **September 3, 2021**

UNITED STATES DISTRICT JUDGE